**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lynda Langfield, | No. CV-17-00056-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Lynda Langfield seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is based on legal error, the Commissioner's decision will be vacated and the matter remanded for further administrative proceedings.

**I.     Background.**

On April 24, 2013, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning September 9, 2010. On April 10, 2015, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On May 21, 2015, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's

decision the Commissioner's final decision.

**II.    Legal Standard.**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

**III.    The ALJ's Five-Step Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the

Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015, and that she has not engaged in substantial gainful activity since September 9, 2010. At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease with stenosis." (AR 21.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> light work as defined in 20 CFR 404.1567(h), except that the claimant cannot climb ladders, ropes, and scaffolds, but can frequently climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. She can occasionally reach overhead bilaterally and frequently operate foot controls with her right lower extremity.

(AR 25.)

1 The ALJ further found that Plaintiff is unable to perform any of his past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**IV. Analysis.**

Plaintiff argues the ALJ's decision is defective for two reasons: (1) the ALJ erred in evaluating the medical opinion of Dr. Peachey, and (2) the ALJ erred in weighing Plaintiff's symptom testimony. (Doc. 15.) The Court will address each argument below.

**A. Weighing of Medical Source Evidence.**

Plaintiff argues that the ALJ improperly weighed the medical opinion examining physician, Dr. John Peachey.

**1. Legal Standard**

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

Historically, the courts have recognized the following as specific, legitimate reasons for disregarding a treating or examining physician's opinion: conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; the lack of medical support for doctors' reports based substantially on a claimant's subjective complaint of pain; and medical opinions that are brief, conclusory, and inadequately supported by medical evidence. *See, e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

### 2. John Peachey, M.D.

Dr. Peachey examined Plaintiff on April 6, 2015. (AR 802-10.) For the examination, Dr. Peachey reviewed MRIs from January 2013 of Plaintiff's cervical, thoracic, and lumbar spine. (AR 802-03.) Dr. Peachey also conducted a physical and neurological examination on Plaintiff. (AR 803-05.) Dr. Peachey's physical examination revealed elevated blood pressure at 156/100; an appearance of being older than her stated age; a hesitant gait; tenderness and spasms over the paracervical muscles; limited cervical range of motion; thoracic spine tenderness with painful ranges of motion; diffuse tenderness over the paralumbar muscles with restricted and painful ranges of motion; decreased strength and sensation in the upper extremities; and decreased strength in both lower extremities. (AR 803-05.) Dr. Peachey's neurological examination revealed diminished sensation to superficial touch and pinprick in both the upper and lower extremities, and a depressed demeanor. (AR 805.)

Ultimately, Dr. Peachey concluded that Plaintiff could, in an 8-hour workday, sit two hours, stand/walk two hours, lift and carry less than 20 pounds, and that Plaintiff's pain, fatigue, dizziness, and headaches would cause her to be off task between 16 and 20% of the workday. (AR 807-08.) Dr. Peachey also opined that Plaintiff's impairments would cause her to miss four to five days of work per month. (AR 808.)

Dr. Peachey's opinion was contradicted by the opinion of Dr. Monte L. Jones, M.D. (AR 558-65.) On September 6, 2013, Dr. Jones conducted a consultative exam on Plaintiff. (AR 558.) Dr. Jones found that Plaintiff had the following limitations: Plaintiff can occasionally lift and/or carry 20 pounds, and frequently, 10 pounds (AR 562); Plaintiff can stand and/or walk for up to 8 hours per day and has no sitting limitations (AR 563); Plaintiff can frequently climb ramps and stairs, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds (AR 563); Plaintiff has no limitations stooping, reaching, handling, fingering, and feeling (AR 563). In the additional comments section of his opinion, Dr. Jones provided the following opinion:

> This claimant is: capable of dressing and undressing themselves, able to walk at a reasonable walking pace over a sufficient distance to carry out activities of daily living, capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living, capable of feeding themselves, and capable of taking care of their personal hygiene.
>
> This claimant can: travel without companion assistance, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, carry out routine ambulatory activities such as shopping and banking, and climb more than a few steps at a reasonable pace with the use of a hand rail.
>
> This claimant is: capable of following directions, and capable of accomplishing the same repetitive task, like an assembly line.
>
> This claimant is capable of: shaking hands, writing, using a computer keyboard, using a telephone, using a headset, sitting at a desk, sorting and handling papers or files, and can place those files in a separate cabinet at or above waist level.

(AR 564.)

Dr. Jones opined Plaintiff had greater abilities than those identified in Dr. Peachey's opinion. Accordingly, the ALJ could discount Dr. Peachey's opinion for

specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31. The ALJ provides four reasons for discounting Dr. Peachey's opinion: (1) "it is inconsistent with the medical evidence of record"; (2) it is "inconsistent with his own minimal clinical findings"; (3) "he did not treat the claimant, and performed the evaluation and examination at the request of the claimant's representative not for treatment but to generate evidence"; and (4) "the doctor merely checked boxes on a form and failed to explain, for example, why the claimant could do 'no' bending." (AR 28.)

### a. Inconsistent with the medical record.

The ALJ's first reason for discounting Dr. Peachey's opinion is that it is inconsistent with the medical evidence of record. (AR 28.) "An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole,[] or by objective medical findings[.]" *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The Court finds that the ALJ's first reason is not specific or legitimate.

In his opinion the ALJ states the he "gives little weight to Dr. Peach[e]y's opinion because it is inconsistent with the medical evidence of record. Specifically, [it is] inconsistent with the claimant's normal physical examination in November 2014." (AR 28 (citing AR 718).) Additionally, the ALJ notes that Plaintiff had a normal gait and posture in several exams. (AR 26-27.) But the ALJ fails to identify both the specific findings of Dr. Peachey that are inconsistent and the specific contrary medical evidence. The Court finds that the ALJ's first reason is vague and conclusory, and is not a specific and legitimate reason for rejecting the medical opinion of Dr. Peachey. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (holding that an ALJ commits legal error when she "failed to identify the testimony she found not credible [because] she did not link that testimony to the particular parts of the record supporting her non-credibility determination."). "[W]e are constrained to review the reasons the ALJ asserts" and "we may not take a general finding . . . and comb the administrative record to find specific conflicts." *Id.*

The Commissioner, in its response brief, argues that the medical record shows that "Plaintiff also had only mild and moderate tenderness often found on physical examination of the spine." (Doc. 16 at 5 (citing AR 722-68).) But these justifications by the Commissioner cannot be found in the ALJ's decision as to Dr. Peachey. (*See* AR 28.) The Court must look to the ALJ's stated reasons, not later arguments provided by the Commissioner. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (The Court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking"); *Cotton v. Colvin*, No. CV-16-2230-PHX DGC, 2017 WL 914617, at *4 (D. Ariz. Mar. 8, 2017).

### b. Inconsistent with his own clinical findings.

The ALJ's second reason for discounting Dr. Peachey's opinion is that "his opinions are not consistent with his own minimal clinical findings." (AR 28.) The ALJ provides no citation in support of his assertion. The ALJ does not explain to which clinical findings he is referring or elaborate on how/why they are inconsistent with Dr. Peachey's ultimate limitation recommendations. Such baseless assertions are not sufficiently specific to discount an examining physician's opinion. *Embrey*, 849 F.2d at 421-22 ("[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct."). Accordingly, the ALJ's second reason for discounting Dr. Peachey's opinion is not valid.

### c. Examined at Plaintiff's request.

The ALJ's third reason for discounting Dr. Peachey's opinion is that "he did not treat the claimant, and performed the evaluation and examination at the request of the claimant's representative not for treatment but to generate evidence." (AR 28.) The Ninth Circuit has held "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998). Here, the ALJ does not cite to any evidence that would undermine the credibility of

Dr. Peachey's report. (*See* AR 28.) The Court finds that the ALJ's third reason for discounting Dr. Peachey's opinion is not legitimate.

### d. Checked Box Forms.

The ALJ's fourth reason for discounting Dr. Peachey's medical opinion is that "the doctor merely checked boxes on a form and failed to explain, for example, why the claimant could do 'no' bending." (AR 28.) But an ALJ may not reject a treating physician's opinion simply because it is a questionnaire; an ALJ may only reject such an opinion for specific, legitimate reasons. *See Lester*, 81 F.3d at 830-31. "[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments." *Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017)

In support of her argument that the ALJ erred, Plaintiff relies on the Ninth Circuit's opinion in *Garrison*. (Doc. 22 at 5.) In that case the court found that an ALJ had erred by discounting a physician's opinions presented in a checked-box form when the physician's opinions "were entirely consistent with the hundreds of pages of treatment notes." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *see also Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (finding error where an ALJ rejected a treating physician's "check-box" form because the opinion was supported by plaintiff's testimony and the doctor's extensive treatment notes).

Here, Dr. Peachey's opinion was completed only after he had reviewed Plaintiff's records, performed an examination, and authored a narrative describing his findings regarding his opinion of Plaintiff's medical limitations. (*See* AR 802-10.) The ALJ erred by discounting Dr. Peachey's opinion merely because it was a checked-box form. The Court finds that the ALJ's fourth reason for discounting Dr. Peachey's opinion is not legitimate.

### e. Summary.

The ALJ's reasons provided for discounting the opinion of Dr. Peachey are not

specific and legitimate. Accordingly, the Court finds the ALJ committed legal error by doing so, and will reverse the final decision of the Commissioner.

**B.     The ALJ Erred in Evaluating Plaintiff's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. In other words, the ALJ found Plaintiff's statements not credible to the extent she claims she is unable to perform in a competitive work environment.

**1.     Plaintiff's Symptom Testimony.**

At the hearing Plaintiff testified to the following facts. (AR 43-59.) Plaintiff last worked as a Nurse prior to her disability onset in September 2010, when she was "fired/laid off" from her position. (AR 45, 54.) Plaintiff does not know if her employment was terminated due to medical problems. (AR 55.) After her employment was terminated, Plaintiff considered looking for "some type of secretarial type work," but decided against it because working on her home computer caused her neck and back pain, and she "just didn't think that [she] would be able to do anything [at a secretarial job]." (AR 46.) Plaintiff attended physical therapy in 2010, but it was not effective. (AR 46.) She takes prescribed medications for her pain, which "helps a little bit . . . but nothing takes [the pain] away . . . completely." (AR 47.) Plaintiff underwent other treatment for her ongoing pain, including "radiofrequency ablation" and epidural injections, but the relief was only

short term. (AR 56.)

Plaintiff asserts that she can sit no more than 30 minutes; stand in one place for no more than five minutes; walk less than a block; and lift no more weight than a gallon of milk. (AR 47-48, 50-51.) During the day, Plaintiff lies down on the couch with pillows to relieve pressure. (AR 51.) Plaintiff sleeps about six hours during the night, but is still tired during the day, and about three days a week her pain is so severe that she "can hardly leave the house." (AR 52-53; Doc. 15 at 3.) Additionally, Plaintiff experiences problems with depression, which she believes is caused by her other symptoms and is secondary to her physical pain. (AR 51.)

Plaintiff lives with her husband and two grandchildren. (AR 45.) The grandchildren were age five and nine when they first moved in with Plaintiff in 2012. (AR 45-46). Plaintiff took in her grandchildren because her daughter, the mother of the two children, was "living on the streets and using drugs." (AR 47.) Around the house, Plaintiff does some chores, but modifies how she does them to accommodate her physical limitations by dividing chores into small segments, and sitting for 10 to 15 minutes before getting up and continuing. (AR 48-49.) She makes sure her grandchildren eat, but instead of cooking she will heat things in the microwave because "it's the easiest." (AR 49). As of the date of the hearing, Plaintiff's grandchildren were old enough to dress and bathe themselves, and she does not have to assist with that. (AR 49). Plaintiff can grocery shop, but asserts that she needs to lean on a cart, even if only buying one item, and she uses it like a crutch. (AR 50.)

Plaintiff has no health insurance, because she cannot afford private insurance and she was denied state-sponsored coverage. (AR 47.) She hopes to be able to obtain insurance so that she can receive more consistent treatment, regain function, and return to work. (AR 56.)

### 2. ALJ's reasons for discounting Plaintiff's testimony.

The ALJ gave the following four reasons for finding Plaintiff's testimony not fully credible: (1) "[d]iagnostic testing of the [Plaintiff's] spine does not reveal any significant

abnormalities; (2) Plaintiff has "had several normal physical examinations"; (3) Plaintiff's reported activities, such as her ability to "clean, cook, and care for her young grandchildren[,] . . . suggests that [Plaintiff] is not as limited to the extent one would expect, given her complaints of disabling symptoms and limitations"; and (4) Plaintiff's treatment and medications have "been generally successful in controlling and improving her symptoms." (AR 29-30.)

As an initial matter, the ALJ fails to identify a single specific limitation asserted by Plaintiff that is inconsistent with the record. (*See* AR 29-30.) Instead, the ALJ merely states that Plaintiff "is not quite as limited as she alleges[,]" and then provides the four reasons listed above, each accompanied by unexplained citations to the record. (*Id.*) This analysis is insufficient, and does not satisfy the legal standards set out in *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (finding an ALJ committed legal error when she "failed to identify the testimony she found not credible, [and] she did not link that testimony to the particular parts of the record supporting her non-credibility determination.")

The Commissioner argues that "this is not a case where the ALJ dismissed the claimant's statements as not credible and then simply offered a summary of the medical record that supported the residual functional capacity finding. Rather, the ALJ made specific findings as to the medical evidence, the treatment record, and the activities evidence." (Doc. 16 at 12.) But the Commissioner does not cite to a single example of any such specific finding in the ALJ's decision, and the Court finds none. Accordingly, the ALJ's discounting of the Plaintiff's symptom testimony was not supported by substantial evidence.

On remand, the ALJ will re-evaluate Plaintiff's credibility, and must provide specific examples of the testimony she finds to be not credible and link that testimony to specific parts of the record justifying her explanation.

**V.    Remand.**

Where an ALJ fails to provide adequate reasons for rejecting the opinion of a

physician, the Court must credit that opinion as true. *Lester*, 81 F.3d at 834. An action should be remanded for an immediate award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007), *Orn*, 495 F.3d at 640, *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004), and *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). There is "flexibility" which allows "courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1020.

In this instance, the first and second factors are clearly satisfied. The record is substantial, and the Court has found that the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's symptom testimony and the medical opinion of Dr. Peachey. However, the third factor is a close call. But even if the improperly discredited evidence, when credited as true, requires a finding of disability, an evaluation of the record still creates serious doubt that the Plaintiff is, in fact, disabled. Specifically, the medical opinion of Dr. Monte L. Jones, while not relied on by the ALJ as a reason for discounting Dr. Peachey's medical opinion, stands as a controverting opinion supported by substantial evidence. Additionally, a thorough review of the record shows a number of inconsistencies with Plaintiff's testimony that were not identified or discussed by the ALJ.

Accordingly, the Court will exercise its discretion and remand this case for further proceedings consistent with this opinion.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security

1 | is **vacated** and this case is **remanded** for further proceedings consistent with this
2 | opinion. The Clerk shall enter judgment accordingly and **terminate** this case.
3 |       Dated this 23rd day of March, 2018.

*(signature)*

Honorable John Z. Boyle
United States Magistrate Judge